**William R. NETLING, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9334.**

Court of Appeals of Alaska.

Oct. 13, 2006.

---

Michael P. Heiser, Ketchikan, for the Appellant.

James Scott, Assistant District Attorney, and Stephen West, District Attorney, Ketchikan, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

William R. Netling pleaded guilty to second-degree controlled substance misconduct (manufacturing methamphetamine).[1] Netling had a prior conviction for distributing cocaine, but that prior conviction was old enough that it did not count for presumptive sentencing purposes.[2] Thus, Netling was a first felony offender for presumptive sentencing purposes, and he was subject to a 5–year presumptive term for his current offense.[3]

At his sentencing hearing, Netling proposed four mitigating factors under AS 12.55.155(d). Any one of these mitigators, if proved, would have authorized the superior court to reduce Netling's sentence by up to fifty percent of the 5–year presumptive term.[4] However, Superior Court Judge Michael A. Thompson rejected all of Netling's

---

1. AS 11.71.020(a)(2)(A).

2. *See* AS 12.55.145(a)(1)(A).

3. AS 12.55.125(c)(1) (pre-March 2005 version).

4. *See* AS 12.55.155(a)(2) (pre-March 2005 version).

proposed mitigators. He then sentenced Netling to the 5–year presumptive term.

Netling now appeals the superior court's rulings on two of these proposed mitigators: (d)(13) and (d)(9).

Mitigator (d)(13)—which has been renumbered as (d)(12) in the current version of the statute—applies when the harm caused by the defendant's conduct, both in the defendant's current offense and in any past offenses, has been consistently minor and inconsistent with a substantial term of imprisonment. Judge Thompson declared that, given the facts of Netling's case, mitigator (d)(13) was "a close[ ] call". Nevertheless, Judge Thompson rejected mitigator (d)(13).

In his ruling, Judge Thompson relied not only on the danger posed by methamphetamine itself, but also on the physical danger posed by the manufacturing process:

> *The Court:* [M]ethamphetamine labs . . . pose a hazard [apart] from their intended purpose. . . . [Although] nobody builds these things with the intent [that] they're going to blow up or cause a fire, . . . if we pick up the newspapers, at least in our major communities, [we see that this] is exactly what's happening. These [labs] are not only [putting] methamphetamines into the stream of illicit commerce, but [they are] actually . . . mak[ing] people sick and [they] sometimes burn people up . . . . [T]he lab itself is a hazard.

■ Netling argues that Judge Thompson was wrong to reject mitigator (d)(13). Netling points out that he was manufacturing methamphetamine on only a small scale. Netling also points out that the State presented no evidence that Netling had engaged in numerous sales of methamphetamine, or that anyone had overdosed or otherwise become seriously ill as a result of Netling's activities.

But as this Court explained in *Ison v. State*, 941 P.2d 195 (Alaska App.1997), certain crimes are serious enough "that [they] are normally thought to justify substantial imprisonment even though they may involve no injury at all":

Many crimes—from attempted murder and robbery to bribery and driving while intoxicated—do not require proof of physical injury or actual harm to property. These offenses are punished because of the risks they create, and because of the serious disruption of the social fabric they entail. Such risks and disruptions are "harms" for purposes of the criminal law:

> [The criminal law deals with the] harm which results from human conduct—social harm. With reference to this term, it [should] be mentioned that it is socially harmful not only to have a man murdered, a dwelling burglariously invaded, or property stolen, but also to have a conspiracy formed in the community, to have one member thereof challenge another to a duel, or offer to bribe an officer. In these latter instances, let it be emphasized, it is socially harmful to have such influences abroad in the community even if the criminal purpose of the conspiracy is not achieved, the challenge is refused, and the bribe rejected.

R. Perkins & R. Boyce, Criminal Law (3rd ed.1982), p. 11.

For these reasons, we reject [the] contention that mitigator (d)(13) speaks only to physical harm to persons or property. Instead, . . . [w]hen a defendant proposes mitigator (d)(13)[,] the sentencing court can take into account not only the physical injury and harm to property inflicted by the defendant, but also the relative seriousness of the defendant's conduct and the risk of harm posed by the defendant's conduct.

*Ison,* 941 P.2d at 198.

It is evident that the Alaska Legislature views methamphetamine as a particularly dangerous drug, and the manufacture of methamphetamine as a serious offense. Even though methamphetamine is a Schedule IIA controlled substance,[5] the legislature has enacted a special provision of law to punish the manufacture of methamphetamine more severely than the manufacture of other Schedule IIA controlled substances. Generally, the manufacture of a Schedule IIA con-

---

**5.** AS 11.71.150(e)(2).

trolled substance is third-degree controlled substance misconduct, a class B felony. *See* AS 11.71.030(a)(1). In contrast, the manufacture of methamphetamine is second-degree controlled substance misconduct, a class A felony. *See* AS 11.71.020(a)(2).

Netling does not dispute that methamphetamine is a particularly dangerous drug, nor does Netling dispute the accuracy of Judge Thompson's remarks about the dangers of the methamphetamine manufacturing process. This being so, Judge Thompson was not required to find mitigator (d)(13) simply because Netling was manufacturing methamphetamine on a small scale and his activities had never caused physical harm to anyone.

■ We now turn to mitigator (d)(9)—which has been re-numbered as (d)(8) in the current version of the statute: the assertion that Netling's conduct was among the least serious within the definition of the offense. Netling argued that his conduct was among the least serious because he only manufactured methamphetamine on a limited scale. Judge Thompson rejected this mitigator for the following reasons:

> *The Court:* Manufacture of this [substance], even on a small scale, is—normally, I think, most of us would consider—well, I wouldn't say [that it was] the most serious, necessarily. I guess that would depend on how much a person was manufacturing. But the allegation is that he was actually making the stuff—and would, if he applied himself to it, be able to manufacture far more, presumably, than he could personally use.... So it would be hard—I can't—I think it would be quite a stretch—and I can't say that I would consider this the least serious conduct that the legislature intended to prohibit with this statute.

Judge Thompson's remarks are problematic. His first and second sentences suggest that he rejected mitigator (d)(9) because he believed that the act of manufacturing methamphetamine, in any amount, could not qualify as "among the least serious". If so, this was error.

As we pointed out above, the legislature has classified the manufacture of methamphetamine as a more serious offense than the manufacture of other Schedule IIA controlled substances. Generally, the manufacture of a Schedule IIA controlled substance is a class B felony, but the manufacture of methamphetamine is a class A felony.

But precisely because the manufacture of methamphetamine constitutes a separate, higher degree of offense than the manufacture of other Schedule IIA controlled substances, a superior court would commit error by rejecting mitigator (d)(9) simply on the basis that methamphetamine is among the most dangerous drugs, or that the manufacture of methamphetamine is among the most serious social problems. These are the factors that presumably motivated the legislature to punish the manufacture of methamphetamine as a class A felony rather than a class B felony. The question posed by mitigator (d)(9) is whether, within the range of methamphetamine manufacturing, the defendant's conduct was among the least serious.

Judge Thompson's third sentence is also problematic. In this sentence, Judge Thompson appears to say that Netling's conduct was not among the least serious because, if Netling had wanted to, and if Netling had "applied himself", Netling could have manufactured far more methamphetamine than he actually did. This fact would be significant if there were any indication that Netling actually intended to engage in manufacture on a far larger scale in the future. But Judge Thompson made no such finding. Rather, his remark suggests the paradoxical conclusion that Netling's conduct was more blameworthy because Netling chose not to utilize the full extent of his manufacturing capability.

For these reasons, we vacate Judge Thompson's ruling on mitigator (d)(9), and we direct him to reconsider this mitigator. Judge Thompson may, in his discretion, hear further argument on this proposed mitigator.

If Judge Thompson rules in Netling's favor on this mitigator, he may proceed to re-sentence Netling. Netling will then have 30 days to appeal this sentence if he wishes. *See* Appellate Rule 215(c). If Judge Thompson again rejects the proposed mitigator, this present appeal will continue.

Within 90 days of this opinion, Judge Thompson shall transmit his ruling on mitigator (d)(9) to this Court. If Judge Thompson again rules against Netling, the parties shall have 30 days to file simultaneous supplemental memoranda addressing the judge's ruling. When we have received the supplemental memoranda of the parties, we shall renew our consideration of this issue.

We retain jurisdiction of this appeal.